1

2

3

4

5

6

7

8                        IN THE UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10   MARCELA VASCONCELOS-FLOREZ,

11              Plaintiff,                    No. CIV S-08-2100 GEB DAD PS

12        vs.

13   WORLD SAVINGS BANK, et al.,              FINDINGS & RECOMMENDATIONS

14              Defendants.

15   _____/

16          This matter came before the court on June 12, 2009, for hearing of defendants'

17   motion to dismiss plaintiff's second amended complaint.  Plaintiff Marcela Vasconcelos-Florez,

18   proceeding pro se, appeared on her own behalf.  Plaintiff was accompanied by Edgar Hilbert,

19   who served as a Spanish interpreter for plaintiff.  Christopher A. Carr, Esq. appeared

20   telephonically for defendants.

21          Plaintiff was heard with regard to her failure to file written opposition to

22   defendants' motion.  In the interests of justice, the court granted plaintiff an additional two weeks

23   to file opposition to the motion.  With the filing of plaintiff's opposition and defendants' reply,

24   the matter stood submitted.  Upon consideration of defendants' motion, the parties' briefs, oral

25   argument, and the entire file, the undersigned recommends that defendants' motion be granted

26   without leave to amend.

BACKGROUND

On August 7, 2008, plaintiff commenced this action by filing a voluminous pro se complaint in San Joaquin County Superior Court.  (Notice of Removal (Doc. No. 1), Ex. A.)  On September 5, 2008, defendants Wachovia Mortgage, FSB, formerly known as World Savings Bank, FSB, and Golden West Savings Association Service Co. removed the case to the district court on the ground that federal jurisdiction arises from plaintiff's allegation of claims based on federal laws.  (Id. at 2.)  Specifically, defendants cited plaintiff's claims of mail fraud in violation of 18 U.S.C. § 1341 and loan sharking (RICO) in violation of 18 U.S.C. § 1962.  (Id., citing Ex. A at 6, 8.)

Immediately after removal, defendants filed their first motion to dismiss.  After hearing oral argument on defendants' motion, the undersigned granted defendants' motion with leave to amend.  (Order filed Nov. 24, 2008 (Doc. No. 16).)  Plaintiff was advised that in an amended complaint, each claim and the involvement of each defendant must be sufficiently alleged.  See Local Rule 220 (requiring that an amended complaint be complete in itself without reference to any prior complaint).  Plaintiff was directed to include clear and concise but complete factual allegations describing the conduct and events that underlie her claims.  Plaintiff was informed that important exhibits could be attached to the amended complaint if the exhibits serve to explain plaintiff's allegations.

Plaintiff filed her first amended complaint on December 22, 2008 (Doc. No. 21).  On January 12, 2009, defendants moved to dismiss the first amended complaint (Doc. No. 24).  After hearing the motion on February 27, 2009, the undersigned granted defendants' motion, with leave to file a second amended complaint.  (Order filed Mar. 2, 2009 (Doc. No. 27).)

Plaintiff filed her second amended complaint on April 10, 2009 (Doc. No. 28).  On May 4, 2009, defendants moved to dismiss the new pleading (Doc. No. 29).  Plaintiff did not file written opposition to defendants' motion but appeared at the hearing on June 12, 2009, and claimed that she did not receive defendant's most recent motion, despite the fact that the motion

1   was mailed to her address of record and plaintiff was aware of the hearing.  In the interests of

2   justice, the undersigned granted plaintiff leave to file opposition out of time.  Opposition was

3   filed on June 26, 2009, and defendants' reply was filed on July 1, 2009.

4                                          PLAINTIFFS' CLAIMS

5                    In her second amended complaint, plaintiff alleges in conclusory fashion as

6   follows.  She was a customer of defendant World Savings Bank and took out a $240,000 home

7   mortgage in 2003.  She made mortgage payments for five years.  In 2008, she telephoned

8   defendants to request refinancing due to personal circumstances, but her request was refused.

9   Prior to 2008, defendants called plaintiff's home several times to ask her whether she was

10  interested in taking out a $50,000 line of credit.  The caller represented to plaintiff that a line of

11  credit is just like a credit card.  The caller did not inform plaintiff that the line of credit would

12  require use of her house as security.  Had plaintiff known the line-of-credit offer was basically a

13  second mortgage, she would not have taken the offer.  Plaintiff does not recall signing loan

14  documents stating that her home was security for her line of credit, and defendants have not

15  provided her with copies of documents signed by her showing that she agreed to put her house up

16  as security for the loan.  Plaintiff made all payments on her line of credit until her wallet was

17  stolen.  She stopped making payments "for 2-3 months."  When she attempted to pay the balance

18  owed on the line-of-credit loan, defendants' representatives notified her that due to her

19  delinquency her house had been foreclosed.  The loss of her home in foreclosure caused plaintiff

20  extreme emotional distress.  She seeks "all damages allowed by law and equity for defendant's

21  conduct, including rescission of the contract."  (Second Am. Compl. at 1-2.)

22                                       ARGUMENTS OF THE PARTIES

23                   Defendants seek dismissal of plaintiff's second amended complaint pursuant to

24  Federal Rule of Civil Procedure 12(b)(6) on the grounds that the pleading fails to state any claim

25  upon which relief may be granted and that, to the extent the pleading attempts to state a claim for

26  fraud, it does not satisfy the particularity requirements of Federal Rule of Civil Procedure 9.

1   Defendants note that plaintiff's original and first amended complaints alleged violations of

2   federal laws but her second amended complaint does not mention any federal statute and

3   therefore, since this action was removed from state court on the basis of federal question

4   jurisdiction, the court must consider whether federal jurisdiction still exists.

5           In support of their Rule 12(b)(6) motion, defendants observe that the second

6   amended complaint pleads almost no facts and the few facts alleged are legally insufficient to

7   state any claim upon which relief may be granted.  Defendants contend that, at best, the pleading

8   appears to be an effort to state a claim for common law misrepresentation, i.e., fraud, although

9   the pleading falls far short of meeting the Rule 9 standard for pleading such a claim.  Defendants

10  also argue that plaintiff's allegations concerning the alleged misrepresentation strain credulity

11  and fail to establish justifiable reliance.  Defendants argue further that plaintiff's claims against

12  defendant Golden West Savings Association Service Co. should be dismissed because this

13  defendant's role as trustee under the foreclosed deed of trust provides no basis for liability on its

14  part to plaintiff.

15          In opposition, plaintiff contends that she has clearly stated her legal claim but

16  wants to revise her prayer for relief to claim actual damages for loss of vehicles, loss of antique

17  furniture and family heirlooms, as well as "special damages, tort damages, pain-and-suffering

18  with intentional affliction of psychological distress, and punitive damages."  (Pl.'s Opp'n (Doc.

19  No. 31), at 2.)  Plaintiff seeks millions of dollars in damages and asks that her house returned to

20  her with "quiet title."  (Id.)  Plaintiff contends that her "cause-of-action, legal claim, and/or

21  claim-for-relief is gross misrepresentation; breach of professional ethics; gross consumer neglect;

22  gross consumer fraud; gross real estate fraud; intentional harassment and miscarriage-of-justice

23  by so-called agents and affiliates."  (Id. at 2-3.)  Plaintiff asserts that "[n]egligence and

24  occurrences of fraud" were so continuous that, in her words,

25          I had to rely on my own instincts to assume "intent".  Being an
            unmarried Hispanic woman, I rely on my instincts to assume
26          racism, "redlining", and homeowner-targeting, which is defined in

1                  the law books.  I was "targeted", because I appeared to be alone,
                and vulnerable; and I cannot speak, read, or write English fluently.

2

3   (Id. at 3.)  Plaintiff claims that the President of the United States "recently wrote into Law that

4   Mortgage contracts given to Spanish-speaking people, all over the United States, must be

5   translated into Spanish, now" and her "guess" is that the new law is retroactive and now applies

6   to her.  She complains that defendants never presented anything to her in Spanish, and asserts

7   that the contract she signed is not the same contract that has been sent to her as a copy of the

8   original equity line-of-credit contract.  Plaintiff concludes that these circumstances demonstrate a

9   violation of the Truth in Lending Act and warrant rescission.  (Id.)

10            Plaintiff alleges that the equity line-of-credit checks she received were "disguised"

11   as her personal checks and she received them instead of the one check for $50,000 that she

12   should have received "to secure the HELOC/second mortgage."  (Id. at 4.)  Plaintiff also

13   complains of being manhandled by authorities when she was evicted and of constant harassment,

14   humiliation, and intimidation, in violation of RICO and laws governing use of the mail and the

15   internet.  In this regard, plaintiff asserts that her "additional legal claim is still 'Violation of

16   RICO', and 'Consumer Fraud of RICO'."  (Id.)

17            LEGAL STANDARDS APPLICABLE TO DEFENDANTS' MOTION

18            The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

19   sufficiency of the complaint.  N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir.

20   1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of

21   sufficient facts alleged under a cognizable legal theory."  Balistreri v. Pacifica Police Dep't, 901

22   F.2d 696, 699 (9th Cir. 1990).  A plaintiff is required to allege "enough facts to state a claim to

23   relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Thus,

24   a defendant's Rule 12(b)(6) motion challenges the court's ability to grant any relief on the

25   plaintiff's claims, even if the plaintiff's allegations are true.

26   /////

1    In determining whether a complaint states a claim on which relief may be granted,

2    the court accepts as true the allegations in the complaint and construes the allegations in the light

3    most favorable to the plaintiff.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Love v.

4    United States, 915 F.2d 1242, 1245 (9th Cir. 1989).  In general, pro se complaints are held to less

5    stringent standards than formal pleadings drafted by lawyers.  Haines v. Kerner, 404 U.S. 519,

6    520-21 (1972).  However, the court need not assume the truth of legal conclusions cast in the

7    form of factual allegations.  W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).  The

8    court is permitted to consider material which is properly submitted as part of the complaint,

9    documents not physically attached to the complaint if their authenticity is not contested and the

10   plaintiff's complaint necessarily relies on them, and matters of public record.  Lee v. City of Los

11   Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).

12   Federal Rule of Civil Procedure 9, titled "Pleading Special Matters," provides as

13   follows with regard to claims of "Fraud, Mistake, Condition of the Mind":

14       In all averments of fraud or mistake, the circumstances constituting
         fraud or mistake shall be stated with particularity.  Malice, intent,
15       knowledge, and other condition of mind of a person may be
         averred generally.
16

17   Fed. R. Civ. P. 9(b).  "Rule 9(b) serves not only to give notice to defendants of the specific

18   fraudulent conduct against which they must defend, but also 'to deter the filing of complaints as a

19   pretext for the discovery of unknown wrongs, to protect [defendants] from the harm that comes

20   from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon

21   the court, the parties and society enormous social and economic costs absent some factual

22   basis.'"  Bly-Magee v. California, 236 F.3d 1014, 1018 (9th Cir. 2001) (quoting In re Stac Elec.

23   Sec. Litig., 89 F.3d 1399, 1405 (9th Cir. 1996)).  Accordingly, pursuant to Rule 9(b), a plaintiff

24   at a minimum must plead evidentiary facts such as the time, place, persons, statements and

25   explanations of why allegedly misleading statements are misleading.  In re GlenFed, Inc. Sec.

26   Litig., 42 F. 3d 1541, 1547 n.7 (9th Cir. 1994); see also Vess v. Ciba-Geigy Corp. USA, 317 F.3d

1  1097, 1106 (9th Cir. 2003); <u>Decker v. Glenfed, Inc.</u>, 42 F.3d 1541, 1548 (9th Cir. 1994) ("The

2  plaintiff must set forth what is false or misleading about a statement, and why it is false."); <u>Fecht</u>

3  <u>v. Price Co.</u>, 70 F.3d 1078, 1082 (9th Cir. 1995).[1]  Furthermore, "Rule 9(b) does not allow a

4  complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate

5  their allegations when suing more than one defendant . . . an inform each defendant separately of

6  the allegations surrounding his alleged participation in the fraud." <u>Swartz v. KPMG LLP</u>, 476

7  F.3d 756, 765-66 (9th Cir. 2007).

8          To state a cognizable claim for intentional infliction of emotional distress under

9  California law a plaintiff must allege:  (1) extreme and outrageous conduct by the defendant with

10  the intention of causing, or reckless disregard of the probability of causing, emotional distress;

11  (2) plaintiff's suffering of severe or extreme emotional distress; (3) and actual and proximate

12  causation of the emotional distress by the defendant's outrageous conduct.  <u>Christensen v. Super.</u>

13  <u>Ct.</u>, 54 Cal. 3d 868, 903 (1991); <u>Cervantez v. J.C. Penney Co.</u>, 24 Cal. 3d 579, 593 (1979).

14                                          ANALYSIS

15          The court finds it difficult to discern legal claims in plaintiff's brief and vague

16  second amended complaint, other than one act of alleged misrepresentation, possible fraud,  and

17  infliction of emotional distress.[2]

18          In her conclusory opposition to defendants' motion to dismiss, plaintiff argues

19  that her legal claims are for gross misrepresentation; breach of professional ethics; gross

20

21          [1]  In addition, "[u]nder California law, the 'indispensable elements of a fraud claim
    include a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and
22  damages.'" <u>Vess</u>, 317 F.3d at 1105 (quoting <u>Moore v. Brewster</u>, 96 F.3d 1240, 1245 (9th Cir.
    1996)).
23

24          [2]  In the order dismissing plaintiff's original complaint with leave to amend, the court
    advised plaintiff that an amended complaint supersedes the previous complaint, each claim must
25  be alleged in the amended complaint, the amended complaint must be complete in itself without
    reference to any prior complaint, and the amended complaint must contain clear and concise but
26  complete factual allegations describing the conduct and events that underlie the claims.  (Order
    filed Nov. 24, 2009 (Doc. No. 16) at 1-2.)

consumer neglect; gross consumer fraud; gross real estate fraud; intentional harassment; miscarriage-of-justice; negligence; fraud; failure to provide documents translated into Spanish; failure to provide a copy of plaintiff's signed equity line-of-credit contract; provision of equity line-of-credit checks "disguised" as personal checks; and harassment, humiliation, and intimidation.  However, even if this laundry list of claims had been included in the second amended complaint, the pleading does not contain sufficient factual allegations to support such claims.

Plaintiff also argues in her opposition that there were violations of the Truth in Lending Act (TILA), RICO, and unidentified laws that govern use of the mail and the internet. Again, even if these statutes had been cited in her second amended complaint, plaintiff has failed to allege sufficient facts to support the existence of such violations.

To state a cause of action under RICO, 18 U.S.C. § 1962(c), a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) causing injury to plaintiff's business or property.  Living Designs, Inc. v. E.I. Dupont de Nemours & Co., 431 F.3d 353, 361 (9th Cir. 2005).  In her second amended complaint, plaintiff has not alleged the existence of a RICO enterprise and has not identified predicate acts allegedly committed by defendants.  See Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985).

To state a claim for rescission under TILA, the plaintiff must allege that she is able to tender the proceeds of her loan.  See Yamamoto v. Bank of New York, 329 F.3d 1167, 1171 (9th Cir. 2003) (holding that rescission under TILA "*should* be conditioned on repayment of the amounts advanced by the lender" and explaining that, because rescission is a remedy that restores the status quo ante, a borrower seeking rescission is required to allege ability to tender the loan proceeds).  There is no such allegation in the second amended complaint.

To the extent plaintiff has attempted to allege a claim for intentional infliction of emotional distress under California law, plaintiff has failed to state a cognizable claim because her second amended complaint does not allege facts suggesting that any conduct engaged in by

1   defendants was extreme or outrageous.  Nor does the complaint allege specific facts showing that

2   defendants acted with the requisite intent or that plaintiff suffered severe or extreme emotional

3   distress as a result of defendants' specific conduct.  Instead, in her prayer for relief plaintiff

4   merely states that she is seeking "all damages allowed by law and equity for defendant's conduct,

5   including rescission of the contract."  (Second Amended Compl. (Doc. No. 28 at 2.)

6          Plaintiff's second amended complaint may be seen as attempting to state a claim

7   of fraud against the defendants.  However, plaintiff has alleged merely that "the Defendants

8   called [her] home several times inquiring about [her] interest to take out a $50,000 credit line"

9   and that "[t]he male caller represented to [her] that the line of credit was just like a credit card"

10  and "made no attempt to inform [her] that the credit line used my house as security."  (Id.)

11  Plaintiff appears to be suggesting that she agreed to take out a $50,000 line of credit from the

12  bank in reliance on several phone conversations with a stranger, did not review the papers that

13  were sent to her for signature, and wrote checks on the line of credit with the belief that

14  defendants had provided her with a credit card funded by an unsecured $50,000 loan.  This is

15  simply not a plausible claim.

16         Plaintiff has also alleged that she has no recollection of signing loan documents

17  agreeing that her home would be the security for her equity line of credit and that defendants

18  have not provided her with copies of the signed documents in which she entered into such an

19  agreement.  The court takes judicial notice of exhibits attached to plaintiff's first amended

20  complaint.[3]  (Doc. No. 21.)  Exhibit C-1 to the amended complaint is an unsigned copy of a deed

21  of trust prepared for plaintiff's signature and providing plaintiff's home as "security for an equity

22  line of credit agreement" entered into by plaintiff on February 14, 2006.  The document clearly

23  provides that plaintiff's home will serve as the security for her equity line of credit.

24
        _____

25       [3]   See Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001) (on a motion to
        dismiss, court may consider matters of public record); MGIC Indem. Corp. v. Weisman, 803 F.2d

26       500, 504 (9th Cir. 1986) (on a motion to dismiss, the court may take judicial notice of matters of
        public record outside the pleadings).

1    Finally, plaintiff's conclusory suggestions of fraud are insufficient under Federal

2    Rule of Civil Procedure 9(b).  As noted above, Rule 9(b) requires a party to "state with

3    particularity the circumstances constituting fraud."   This, plaintiff has failed to do.  The court

4    may dismiss a fraud claim when its allegations fail to meet the required pleading standard.  Vess,

5    317 F.3d at 1107; see also Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997) ("fraud

6    allegations must be accompanied by 'the who, what, when, where, and how' of the misconduct

7    alleged").  Here, plaintiff's second amended complaint not only fails to meet the Rule 9(b)

8    standards governing complaints alleging fraud, it is so incomplete that the pleading fails to state

9    any claim for relief.

10    The undersigned has carefully considered whether plaintiff may amend her

11    complaint to state any claim upon which relief can be granted.  "Valid reasons for denying leave

12    to amend include undue delay, bad faith, prejudice, and futility."  California Architectural Bldg.

13    Prod. v. Franciscan Ceramics, 818 F.2d 1466, 1472 (9th Cir. 1988).  See also Klamath-Lake

14    Pharm. Ass'n v. Klamath Med. Serv. Bureau, 701 F.2d 1276, 1293 (9th Cir. 1983) (holding that,

15    while leave to amend shall be freely given, the court does not have to allow futile amendments).

16    Plaintiff has already amended her complaint twice, and it appears that further amendment would

17    be futile.  At the core of plaintiff's pleading is her contention that defendants engaged in

18    misrepresentation and fraud that resulted in plaintiff's loss of her home.  The undersigned finds it

19    unlikely that plaintiff can draft a further amended complaint with sufficient factual allegations to

20    state a cognizable claim.  Rather, the consistently vague nature of plaintiff's fraud claims

21    suggests that plaintiff is unable to plead her claims with greater particularity.

CONCLUSION

22    Accordingly, IT IS RECOMMENDED that:

23    1.  Defendants' May 4, 2009 motion to dismiss (Doc. No. 29) be granted; and

24    2.  Plaintiff's second amended complaint be dismissed without leave to amend

25    and this case be closed.

1           These findings and recommendations will be submitted to the United States

2  District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within

3  seven days after being served with these findings and recommendations, any party may file and

4  serve written objections with the court.  A document containing objections should be titled

5  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to objections

6  shall be filed and served within seven days after the objections are served.  The parties are

7  advised that failure to file objections within the specified time may, under certain circumstances,

8  waive the right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th

9  Cir. 1991).

10  DATED: March 9, 2010.

11

12                                    _Dale A. Drozd_

13                                DALE A. DROZD
                                    UNITED STATES MAGISTRATE JUDGE

14  DAD:kw
    Ddad1\orders.prose\vasconcelosflorez2100.f&r.mtd3

15

16

17

18

19

20

21

22

23

24

25

26